*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAUTEZ JAMES LAWSON,

        Defendant-Appellant.

UNPUBLISHED
January 15, 2019

No. 338135
Genesee Circuit Court
LC No. 16-040253-FC

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Shautez James Lawson was convicted by a jury of involuntary manslaughter, MCL 750.321, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, carrying a concealed weapon (CCW), MCL 750.227, being a felon in possession of a firearm (felon-in-possession), MCL 750.224f, and carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. Lawson was first sentenced on April 10, 2017, as a violent fourth-offense habitual offender, MCL 769.12, to 25 to 40 years' imprisonment for involuntary manslaughter and AWIGBH, 76 months to 25 years' imprisonment for CCW, 76 months to 10 years' for felon-in-possession, and five years' imprisonment for felony-firearm. Lawson was resentenced on April 23, 2018, as a fourth-offense habitual offender, to 19 to 40 years' imprisonment for involuntary manslaughter, 10 to 25 years' imprisonment for AWIGBH, 6 to 25 years' imprisonment for CCW, 75 months to 10 years' imprisonment for felon-in-possession, and five years' imprisonment for felony-firearm. He appeals as of right. We affirm.

Lawson's convictions arise from a shooting that took place late in the evening on August 7, 2015, after Lawson and several others had been shooting dice and gambling. Edward Johnson was killed during the incident, and Anthony Beady was shot nine times, the most significant of which struck his abdomen. Lawson was also shot in the arm and a number of bullets grazed his face. Although it is undisputed that more than one person was firing a gun on the night in question, Beady and another eyewitness identified Lawson as the person who instigated the shootout and fired first.

At trial, Lawson's recorded police interviews were played for the jury, during which Lawson made reference to the fact that he was on parole and the interrogating officers expressed disbelief about Lawson's version of the events. Lawson argues that admitting this evidence violated his due process rights because it was irrelevant and highly prejudicial. We disagree.

During trial, the court specifically asked defense counsel if he had any objection to admitting Lawson's video-recorded interviews and he said he had none.[1] Later, counsel objected to admitting the transcription of Lawson's interviews, but again stated, "I have no objection to the CD or DVD of each of the two interviews that were played coming in . . . ." Thus, Lawson's attorney waived his current claims. *People v Carter*, 462 Mich 206, 209, 214; 612 NW2d 144 (2000) (Counsel's wavier "extinguishes any error and precludes defendant from raising the issue on appeal" because "[c]ounsel may not harbor error as an appellate parachute."); *People v Williams*, 84 Mich App 226, 229; 269 NW2d 535 (1978).

And even if Lawson had not waived his current objections, his unpreserved claims would be reviewed for plain error and he still would not be entitled to reversal and a new trial. *People v Kowalski*, 489 Mich 488, 505; 803 NW2d 200 (2011); *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Under the plain error standard of review, the defendant must demonstrate the existence of a clear or obvious error that affected his substantial rights. *Carines*, 460 Mich at 763. An error affects substantial rights if it was prejudicial in that it "affected the outcome of the lower court proceedings." *Id*. The reviewing court should reverse only when the defendant is "actually innocent . . . or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks and citation omitted; alternation in original). Lawson failed to meet this high burden.

In general, evidence is admissible if it is relevant, MRE 402, meaning that it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," MRE 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. Evidence is unfairly prejudicial "when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

"A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007). "The danger in revealing a defendant's parolee status is that a jury will recognize that the defendant had previously been convicted of a crime . . . ." *People v McDonald*, 303 Mich App 424, 436; 844 NW2d 168 (2013). Evidence of a prior conviction is generally regarded as being prejudicial to the accused because there is a danger that

---

[1] In his opening statement, defense counsel also repeatedly referenced Lawson's parole status, in part, using it to explain Lawson's flight from the shooting scene. And after Lawson's statement was admitted, defense counsel elicited testimony from the detective that Lawson admitted "shooting" while on parole. Defense counsel further mentioned Lawson's parole status three times in closing argument to explain Lawson's post-offense actions.

-2-

the jury "will misuse prior conviction evidence by focusing on the defendant's general bad character . . . ." *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). However, reference to a defendant's parole status may be admissible for a noncharacter purpose. MRE 404(b)(1).

Here, Lawson identified himself by his brother's name when he was questioned by police officers at the hospital. He eventually admitted his true name and explained that he initially lied because he was on parole and did not want the incident reported to his parole agent. Lawson was also untruthful about the location at which the shooting occurred, but similarly explained that he was fearful about admitting he was "shooting [dice]" while on parole. In both instances, Lawson's reference to his parole status was presented in an effort to rationalize his admittedly inconsistent statements. If credited by the jury, this evidence was relevant because it had a tendency to make Lawson's version of events more probable than it would otherwise have been.

We further disagree with Lawson's contention that this evidence should have been excluded as unfairly prejudicial under MRE 403. Again, "[t]he danger in revealing a defendant's parolee status is that a jury will recognize that the defendant had previously been convicted of a crime . . . ." *McDonald*, 303 Mich App at 436. Because the jury was already aware that Lawson had a prior felony conviction based upon the parties stipulation, "the requisite prejudice allegedly stemming from the parole references has not been shown." *Id*. Moreover, the evidence was presented in an exculpatory manner in order to explain why Lawson may have lied to the police about certain matters while still telling the truth about his participation in the shooting. Given the potentially beneficial effect this evidence could have had on Lawson's case, its probative value was not substantially outweighed by the risk of unfair prejudice.

Lawson's related argument concerning the interrogating officers' expressions of disbelief is also unavailing. When an interrogating officer comments on issues of credibility while questioning a defendant, the out-of-court statements may be admissible to provide context for the defendant's statements, as long as the statements are in fact relevant for that purpose. *People v Musser*, 494 Mich 337, 353-354; 835 NW2d 319 (2013). Such statements are still subject to exclusion under MRE 403 and, "upon request, must be restricted to their proper scope under MRE 105." *Id*. at 354. The investigating officers referred to Lawson's descriptions of the shooting as "bullshit" at certain points during Lawson's interviews after they received contradictory information from other evidence and witnesses. Although Lawson continuously denied that he was armed or shot anyone, other details of his statement changed. The officers' reference to the contradictory evidence and resulting expressions of disbelief provided context for Lawson's evolving story and were therefore relevant to a material fact, i.e., the credibility of Lawson's version of events.

Nor did the risk of unfair prejudice arising from this evidence substantially outweigh its probative value. Even without the officers' characterization of Lawson's story as "bullshit," his inconsistent statements made it all but certain that his credibility would be called into question. Furthermore, Lawson himself acknowledged that he had been untruthful about certain details of his earlier statements. Given Lawson's acknowledgment of his own lies, it is improbable that the officers' limited expressions of disbelief were given undue weight by the jury. Additionally, any risk of prejudice was lessened by the trial court's final instructions to the jury, in which it advised the jury that it was tasked with determining the facts of the case and which witnesses to believe. Lawson's suggestion that the officers' expressions of disbelief carried extra weight

based upon their role in the criminal justice system is also unpersuasive because the jury was properly instructed that it should evaluate evidence presented by police officers under the same standards applicable to other witnesses. See *McDonald*, 303 Mich App at 437 ("Jurors are presumed to follow a trial court's instructions.").

As an alternative argument, Lawson contends that he was denied the effective assistance of counsel when his attorney permitted this evidence to be introduced without objection. Again, we disagree.

A defendant asserting a claim of ineffective assistance of counsel must preserve the issue for review by moving for a new trial or evidentiary hearing. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Because Lawson failed to do so, this issue is unpreserved. Claims of ineffective assistance of counsel present "a mixed question of fact and constitutional law." *Id*. (quotation marks and citation omitted). Factual findings are reviewed for clear error, while questions of law are reviewed de novo. *Id*. When the defendant fails to properly preserve the issue, our review "is limited to mistakes apparent from the record." *Id*.

A defendant asserting a claim of ineffective assistance bears the burden of establishing that "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *Id*. at 80-81. "The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81. Effective assistance of counsel is presumed, and "counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

We are not persuaded that defense counsel's decision to permit admission of the now challenged evidence was objectively unreasonable. Defense counsel referred to Lawson's parole status in his opening and closing statements, during his cross-examination, and twice stated he had no objection to admitting the interview tapes.[2] Thus, it appears counsel intentionally permitted the prosecution to introduce this evidence. And because evidence of Lawson's parole status and the officers' expressions of disbelief were presented to explain Lawson's inconsistent statements, Lawson cannot overcome the presumption that this decision was a matter of trial strategy. This Court will not second guess a strategic decision of this nature with the benefit of hindsight, *id*. at 242-243, and the mere fact that defense counsel's strategy proved unsuccessful does not render his performance deficient, *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016).[3]

---

[2] Lawson's attorney only objected to the court redacting a separate part of the interview which referenced the penalty Lawson was facing if convicted of first-degree felony-murder.

[3] Although the jury did not fully acquit Lawson, it acquitted him on three of eight counts and returned lesser verdicts on two counts alleging felony-murder and assault with the intent to commit murder.

Furthermore, Lawson cannot demonstrate a reasonable probability of prejudice arising from defense counsel's performance. Even if counsel had objected to the challenged evidence or moved for its exclusion, it is improbable that the objection would have been sustained because the evidence was relevant and its probative value was not substantially outweighed by the risk of prejudice. And if the evidence had been successfully excluded, there was still substantial evidence from which the jury could find Lawson guilty of the offenses for which he was convicted. Beady and a second eyewitness identified Lawson as the shooter, Lawson's blood was discovered inside Beady's home (where Lawson denied having entered after the shooting), and Lawson's DNA was discovered on at least one 9 mm Luger fired cartridge case, i.e., a caliber class that is consistent with the bullets that wounded Johnson and Beady. Accordingly, Lawson has not established a reasonable probability that, but for defense counsel's decision to permit admission of the challenged evidence, the result of the trial would have been different.

Lawson also raises several challenges regarding his original sentences for involuntary manslaughter and AWIGBH, which were improperly imposed pursuant MCL 769.12(1)(a) (requiring mandatory 25-year minimum sentence when certain conditions are met). This Court previously granted Lawson's motion for remand, *People v Lawson*, unpublished order of the Court of Appeals, entered January 25, 2018 (Docket No. 338135), and the trial court subsequently resentenced Lawson without imposing 25-year mandatory minimum sentences under MCL 769.12(1)(a). Consequently, we need not address Lawson's claims of error arising from his previous sentences, as his resentencing rendered those issues moot. See *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010), amended 784 NW2d 204 (2010) (discussing mootness doctrine).

Affirmed.

/s/ Anica Letica
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter